UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

**Carl Goshay,**

        **Petitioner,**

v.

**Dwight Fondren - Warden
(FCI Sandstone),**

        **Respondent.**

**Civil No. 08-5365 (PAM/SRN)**

<u>**REPORT AND RECOMMENDATION**</u>

_____

    Carl Goshay, Federal Correctional Institute Sandstone, Sandstone, Minnesota 55072, <u>pro se</u>.

    Ana H. Voss, United States Attorney's Office, 300 South 4th St., Minneapolis, Minnesota 55415, for Respondent.

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

    The above-captioned case is before the undersigned United States Magistrate Judge on Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1) and Respondent's Response (Doc. No. 4). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that Petitioner's Petition for Writ of Habeas Corpus be denied.

**I.    BACKGROUND**

    Petitioner filed a petition for writ of habeas corpus on October 6, 2008. Petitioner alleges a violation of his due process rights based the decision of a Discipline Hearing Officer ("DHO"),

which resulted in the loss of good conduct time credits ("GCT").  On November 7, 2008, Respondent filed a response, seeking the dismissal of Petitioner's petition.

Petitioner is a federal inmate at the Federal Correctional Institution in Sandstone, Minnesota (FCI Sandstone).  (See Decl. of Angela Buege, ¶ 3, Attach. A to Respondent's Resp.) He is serving a 75-month sentence, followed by five years of supervised release, imposed by United States District Judge Andersen, in the Northern District of Illinois, for conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846.  (Buege Decl., ¶ 3, Attach. A.) Petitioner has a projected release date of April 15, 2012, after the application of accrued GCT credits.  Id.   Respondent is Dwight Fondren, Warden of FCI Sandstone.

On April 7, 2007, an incident report charged Petitioner with Possession, Manufacture, or Introduction of a Hazardous Tool, a Code 108 violation of Bureau of Prisons (BOP) policy. (Buege Decl. ¶ 6 and Attach. B, Incident Report).  The incident report states that on April 7, 2007, Petitioner and his visitor were observed exchanging a cellular telephone.  (Buege Decl., Attach. B., Incident Report).  Petitioner stated that he had not used the phone, but had looked at baby photographs stored on the phone, then returned it to his visitor.  Id.  Petitioner informed his visitor that she was not permitted to have a cell phone in the visiting room.  Id.  Prison staff terminated Petitioner's visit and placed him in the Special Housing Unit ("SHU"), pending investigation of the incident.  Id.

Petitioner received a copy of the incident report on April 8, 2007, at which time staff advised him of his rights and he acknowledged that he understood his rights.  (See Buege Decl. ¶ 7 and Attach. B, Incident Report).  Based on his investigation, the investigating officer

concluded that Petitioner was appropriately charged with Prohibited Act 108, possession of a hazardous tool or weapon. Id. The investigating officer also concluded that Petitioner would remain in the SHU pending a Unit Discipline Committee ("UDC") hearing. Id.

The UDC, consisting of one or more staff members delegated by the warden to hold an initial hearing, may expunge a minor, non-repetitive incident report, determine that the inmate committed the prohibited act and impose minor sanctions or refer the matter to the Discipline Hearing Officer (DHO) for further action and review. (See Buege Decl., ¶ 8, Attach. B; see also, 28 C.F.R. § 541.15.) The DHO is a one-person discipline hearing officer who is responsible for conducting institution discipline hearings and who imposes appropriate sanctions for incidents of inmate misconduct. (See Buege Decl. n. 2; see also 28 C.F.R. § 541.16).

Petitioner appeared before the UDC on April 11, 2007, whereupon he was advised of his rights and made a statement. (Buege Decl., ¶ 9, Attach. B.) Petitioner stated that the report was true, except that he did not touch the cellular telephone. Id. Instead, Petitioner stated that he was not trying to get a cellular telephone, but that his visitor wanted him to see a baby picture; then she returned the phone to her pocket. Id. The incident report notes that based on the seriousness of the offense, the UDC referred the matter to the DHO. Id.

On April 11, 2007, eight days before the DHO hearing, staff provided Petitioner with three forms: (1) Inmate Rights at Discipline Hearing, detailing the right to the presence of a staff representative at the hearing, the right to call witnesses and to present evidence; (2) Notice of Discipline Hearing Before the DHO; and (3) Notice of Advisement of Videoconferencing of DHO Hearings. (See Buege Decl. ¶ 10 and Attach. C, Inmate Rights at Discipline Hearing, Notice of Discipline Hearing Before the DHO and Notice of Advisement of Videoconferencing

of DHO Hearings.)  Petitioner did not request any witnesses or a staff representative.  Id.

At the April 19, 2007 DHO hearing, Petitioner's due process rights were reviewed and Petitioner stated that he understood his rights. (Buege Decl. ¶ 11 and Attachment D, DHO Packet).  Petitioner stated that he never possessed the cellular telephone, but that his girlfriend had the phone and showed him pictures stored on it.  Id.  He also acknowledged that as an inmate, he is held responsible for his visitors' actions, and that his girlfriend should not have brought the phone.  Id.

Petitioner was initially charged with a Code 108 violation of BOP policy, Possession of a Hazardous Tool or Weapon.  (Buege Decl., Attach. B, Incident Report).  After a review of the matter, the DHO advised Petitioner that the appropriate charge was Conduct Which Disrupts Most Like Possession of a Hazardous Tool, a Code 199 violation most like a Code 108 violation of BOP policy. (Buege Decl. ¶ 11, Attach. D, DHO Packet, Attach. G, Amended DHO Report.) The DHO advised Petitioner of the alteration and he indicated that he understood and was prepared to continue with the hearing.  Id.

The DHO considered the reporting officer's documented account that Petitioner and his visitor were observed exchanging a cellular telephone on April 7, 2007.  (Buege Decl. ¶¶ 12-13 and Attach. D, DHO Packet.)  At the time, Petitioner stated that he was not using the phone, but was merely looking at pictures on the visitor's phone.  When he finished looking, he returned the phone to the visitor and advised her that she could not bring a cell phone into the visiting room. Id.  The DHO also considered Petitioner's statements made to investigators during his investigation, to the UDC and to the DHO itself.  Id.  Before the DHO, Petitioner stated that he was not guilty of possessing the phone, but understood that he was responsible for his visitors'

actions.  Id.

Based on the evidence, the DHO concluded there was sufficient information present in the body of the report to support the charge.  Id.  The DHO considered the incident report, the investigating officer's memorandum and Petitioner's statements.  Applying the greater weight of the evidence standard, the DHO found that Petitioner committed the prohibited act of Conduct Which Disrupts Most Like Possessing a Hazardous Tool, a Code 199 violation most like a Code 108 violation of BOP policy.  Id.  Explaining the reason for sanctioning Petitioner's actions, the DHO noted that cellular telephones may be used in an escape attempt and therefore threaten the safety of staff and the orderly running of the prison institution.  (Buege Decl. ¶ 13, Attach. D, DHO Packet.)

The DHO sanctioned Petitioner to the loss of 27 days GCT and 180 days of visiting privileges.  (Buege Decl. ¶ 14 and Attach. D, DHO Packet.)  The DHO also imposed sanctions including the loss of commissary and telephone privileges for 45 days and disciplinary segregation of 30 days, however these actions were suspended.  (Buege Decl. ¶ 14.)  The DHO indicated that the sanctions were imposed to impress upon Petitioner the gravity of his actions and to deter such actions in the future.  Id.  Although the DHO conceded that loss of commissary and telephone privileges were not directly related to the offense, they believed that these sanctions would have a significant impact on future behavior.  Id.

The DHO then advised Petitioner of his appeal rights through the Administrative Remedy Procedure.  (Buege Decl. ¶ 16 and Attach. D, DHO Packet.)  The DHO signed its report on April 19, 2007 and a copy was delivered to Petitioner on April 20, 2007.  Id.

Petitioner appealed his incident report to the Regional and Central BOP offices.  (Buege

Decl. ¶ 23 and Attach. E, Administrative Remedy Generalized Retrieval Data.) The Regional Response Remedy stated that the DHO would amend the DHO report to reflect the charges referenced in Section IV, Findings of the DHO, (Buege Decl., Attach. F, Regional Administrative Remedy Appeal and Response), and an amended DHO report was issued August 13, 2007. (Buege Decl., Attach. G, Amended DHO Report). Both the Regional and Central BOP denied Petitioner's appeal. Id.

Petitioner alleges that he was denied the minimum due process protections set forth by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974). Specifically, he alleges that he is innocent of the charges and that BOP policy does not define a cellular telephone as a hazardous tool. Accordingly, Petitioner claims to have had no notice of the charges involving the specific conduct as to a cellular telephone, in violation of his due process rights.

Respondent argues that Petitioner received the due process to which he was entitled in an inmate disciplinary matter. Respondent contends that Petitioner received notice of the prohibited status of cellular telephones in the facility; that he received notice of the charges against him; and that sufficient evidence supported the DHO's decision that Petitioner committed the prohibited act.

**II.   DISCUSSION**

Petitioner alleges jurisdiction pursuant to 28 U.S.C. § 2241. Jurisdiction is proper under this section because Petitioner is challenging the fact or duration of his confinement, see Preiser v. Rodriguez, 411 U.S. 475, 490 (1973), and venue is also proper because FCI Sandstone is located in the District of Minnesota. See Schmanke v. U.S. Bureau of Prisons, 847 F.Supp. 134,

136 (D. Minn. 1994).  In addition, the petition is reviewable because Petitioner has exhausted the applicable administrative remedies under the BOP administrative remedy program.  See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000), United States v. Bayless, 940 F.2d 300, 304-05 (8th Cir. 1991); see also United States v. Wilson, 503 U.S. 329, 335 (1992) (prisoner can seek judicial review of sentence computation after exhausting administrative remedies.)  Respondent likewise agrees that Petitioner's claims are appropriately before the Court.  Finally, an evidentiary hearing in this matter is not required, because the relevant facts are not in dispute.  See Toney v. Gammon, 79 F.3d 693, 697 (8th Cir. 1996); Ruiz v. Norris, 71 F.3d 1404, 1406 (8th Cir. 1995), cert. denied, 519 U.S. 963 (1996).  The Court has the record before it and the dispute concerns whether the BOP properly applied policy and federal regulations.

    A.            **Due Process**

Due process applies to the BOP through the Fifth Amendment, which provides procedural protection against arbitrary actions of the government which affect an individual's life, liberty or property interest.  U.S. Const. amend V.  A due process claim requires "some legal entitlement, right or liberty interest that is protected under state or federal law."  Peck v. Hoff, 660 F.2d 371, 373 (8th Cir. 1981) (citations omitted).

In inmate discipline cases, courts must ensure that the BOP follows the due process procedures established in Wolff v. McDonnell, 418 U.S. 539 (1974).  Because they are not criminal trials, prison disciplinary proceedings need not provide all of the procedural and substantive protections afforded a defendant in a criminal proceeding.  Id. at 567-68.  Instead, an inmate possesses limited procedural rights at any disciplinary action involving liberty interests, including the loss of good conduct time.  Id. at 554.

Pursuant to Wolff, due process in prison hearings is satisfied by providing the inmate with: (1) advance written notice of the charges, no less than 24 hours before the disciplinary hearing; (2) 'a written statement by the factfinders as to the evidence relied on and reasons for (the disciplinary action);' and (3) the right to call witnesses and present documentary evidence in his defense if permitting him to do so will not jeopardize institutional safety or correctional goals. Wolff, 418 U.S. at 540-41. The Wolff requirements have been codified by the BOP, 28 C.F.R. § 541 eq. seq., and recognized by the Eighth Circuit, see Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002), cert. denied, 537 U.S. 870 (2002).

Here, Petitioner's due process claim is essentially a lack of notice claim. He argues that a cell phone is not a "hazardous tool" and that cell phones are not described as such in any BOP policy. Therefore, Petitioner argues that he and the inmate population have no notice of charges involving specific conduct as to cell phones. Petitioner further argues that he did not literally possess a cell phone and no evidence in the record indicates otherwise.

BOP policy defines a hazardous tool as a tool most likely to be used in an escape or escape attempt, or those tools hazardous to institutional security. See 28 C.F.R. § 541.13, Table 3 - Prohibited Acts and Disciplinary Severity Scale. Respondent submits that a cellular telephone could permit an inmate, whose telephone conversations are otherwise monitored, to communicate with persons outside the prison without being monitored to plan an escape. (See Buege Decl. ¶ 18.) Courts have upheld DHO findings that a cellular telephone is a hazardous tool where the DHO explained its reasoning. Reid v. Adams, No. 2: 05-CV-666, 2006 WL 1966997 (E.D. Va. 2006); Redding v. Holt, No. 06-CV-2254, 2007 WL 2155543 (M.D. Pa. 2007); Noorani v. Vasquez, No. 207-CV-011, 2007 WL 2027845 (S.D. Ga. 2007); Robinson v.

Warden, FCI Fort Dix, No. 07-1469, 2007 WL 1140462 (D. N.J. 2007).

In the instant petition, Petitioner personally acknowledged that he knew cell phones were prohibited in the visiting area.  (Buege Decl., Attach. F, Regional Administrative Remedy Appeal and Response, "I also advised my visitor that she was not allowed to bring a cell phone into the visiting area. . . ."; Attach. D, DHO Packet, Incident Report, "I know that I'm responsible for my visitors and I know that she shouldn't have brought the phone in.")

Petitioner understood the reasoning for the prohibition, conceding in his Regional Appeal, "the sound principle that possession of a cell phone by an inmate of a cell phone [sic] is a legitimate threat to the security of any prison."  (Buege Decl., Attach. F, Regional Administrative Remedy Appeal.)  Moreover, BOP Regional Director Michael K. Nalley noted in his response to Petitioner's regional appeal that Institution Supplement 5267.08, Visiting Regulations, Attachment B, Page 5, No. 11, states, "It is the responsibility of each visitor/inmate to adhere to the visiting regulations as set forth in the following paragraphs . . . We do not permit cellular phones . . . in the visiting room."  (Buege Decl., Attach. F, Regional Administrative Remedy Response.)   Regional Director Nalley further verified with prison staff at Petitioner's facility that the visiting room rules and regulations were posted at the front entrance for visitors to read.  (Id.)  He further referred to Program Statement 5267.08, Visiting Regulations, Page 18, which states, "any act or effort to violate the visiting guidelines of an institution may result in disciplinary action against the inmate."  (Id.)  In sum, Petitioner had actual notice that he would be held responsible if he met with a visitor carrying a cellular telephone.   Furthermore, he understood the policy reasons for the prohibition.

Petitioner also received notice of the charges against him, in fulfillment of his due

9

process rights under Wolff, 418 U.S. at 563-71. On April 11, 2007, Petitioner received notice of the DHO hearing. (Buege Decl., Attach. C, Inmate Rights at Discipline Hearing, Notice of Discipline Hearing Before the DHO, and Notice of Advisement of Videoconferencing of DHO Hearings.) The DHO hearing was held April 19, 2007, eight days after Petitioner had received notice of the hearing. (Buege Decl., Attach. D, DHO Packet.) Petitioner waived his right to a staff representative and did not request any witnesses. (Id.) The DHO was an impartial fact finder, as he did not write the Incident Report, was not a witness to the incident and did not investigate the matter. (Id.) Following the hearing, Petitioner received a written copy of the DHO decision, which included statements of the evidence relied upon and reasons for the findings and sanctions. (Id.) Petitioner cannot claim a denial of his due process rights.

### B. Sufficiency of Evidence Supporting the DHO Decision

Petitioner challenges the sufficiency of the evidence supporting the DHO's decision that Petitioner committed the prohibited act. Specifically, Petitioner argues that the element of possession was lacking, as the cellular phone was not his. Respondent contends that there is sufficient evidence in the record, as reflected in the DHO's decision, to support the DHO's determination that Petitioner committed the prohibited act.

The decision of a prison disciplinary officer is entitled to considerable deference by a reviewing court. If the requirements of due process are met, the decision of the prison discipline officer must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 447 (1985).

> This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

> evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56 (citations omitted). Once the reviewing court determines that there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by petitioner and uphold the finding of the DHO. Id. at 457. This Court's review is thus very limited.

The Court is satisfied that the DHO's determination met the "some evidence" standard of Superintendent v. Hill. The DHO considered testimonial and documentary evidence, including the statements of Petitioner. While Petitioner alleges that he was not "in possession" of the cellular telephone, the reporting officer noted that Petitioner and his visitor were observed exchanging a cell phone. (Buege Decl., Attach. B, Incident Report.) When approached by the reporting officer, Petitioner stated that he looked at pictures on the phone and "gave it back to [the visitor]. . . ." Id. The DHO relied on that evidence to support its findings that Petitioner committed the prohibited act . (Buege Decl., Attach. D, DHO Packet.) As the DHO's decision was based on sufficient evidence, it is entitled to this Court's deference and Petitioner's claim of a due process violation based on insufficient evidence should be denied.

### III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED that:**

1.  Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED**; and

2.  This action be **DISMISSED WITH PREJUDICE.**

Dated: January 7, 2009

               s/Susan Richard Nelson
               SUSAN RICHARD NELSON
               United States Magistrate Judge


Under District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 22, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.